UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RB CAPITAL PARTNERS, INC., a California Corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>CYBERLUX CORPORATION, a Nevada Corporation,<br><br>                              Defendant. | Case No.: 24-cv-01434-AJB-DTF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY ACTION PENDING ARBITRATION**<br><br>**(Doc. No. 15)** |

      Presently before the Court is Defendant Cyberlux Corporation's motion to compel arbitration and to stay action pending arbitration in Plaintiff RB Capital Partners' civil action for alleged breach of contract and declaratory relief. (Doc. No. 15.) The motion has been fully briefed. (Doc. Nos. 16, 18.) On December 10, 2024, the Court compelled supplemental briefing on the issue of whether the parties' agreement delegates the gateway issue of the scope of arbitration clause to the arbitrator, which was raised for the first time in Defendant's Reply in Support of its Motion to Compel Arbitration. (Doc. No. 19.) On December 17, 2024, Plaintiff filed its supplemental brief. (Doc. No. 20.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter is suitable for determination on the papers.

///

## I. BACKGROUND

Plaintiff is a venture capital lender to various emerging and technology-based industries. (Complaint ("Compl."), Doc. No. 1, ¶ 1.) Defendant is a defense industry technology solutions company. (*Id.* ¶ 2.) From October 2021 through July 2022, Plaintiff loaned Defendant a total of $5,250,000, which is evidenced by five separate Convertible Promissory Notes (the "Notes"), executed on different dates:

1. $1,500,000 on October 22, 2021 (the "10/22/21 Note");
2. $1,500,000 on November 8, 2021 (the "11/8/21 Note");
3. $1,500,000 on November 22, 2021 (the "11/22/21 Note");
4. $500,000 on May 23, 2022 (the "5/23/22 Note"); and
5. $250,000 on July 12, 2022 (the "7/12/22 Note").

(*Id.* ¶¶ 8–12; Doc. Nos. 1-3–1-7.) None of the Notes contain an arbitration clause. (*See generally id.*)

In December 2023, Defendant made a single, partial payment of $250,000 towards the debt owed on the 10/22/21 Note. (Declaration of Brett Rosen ("Rosen Decl."), Doc. No. 16-1, ¶ 9.) Otherwise, Defendant has not paid the sums owed on the Notes. (*Id.*)

On December 18, 2023, Plaintiff and Defendant entered into a new agreement with respect to the 11/22/21 Note. (Doc. No. 16 at 5.) The new agreement, entitled Cancellation of Debt in Exchange for Stock Agreement (the "Stock Agreement"), canceled the $1.5 million debt related solely to the 11/22/21 Note, in exchange for Plaintiff "purchasing" common stock in Cyberlux Corp.. (*Id.*)

At the time the Stock Agreement was executed, Defendant's shares were subject to trading restrictions known as "Caveat Emptor," meaning Plaintiff could not sell the shares after the conversion. (Rosen Decl. ¶ 11.) Defendant assured Plaintiff that the Caveat Emptor would soon be lifted. (*Id.*) Later, in January 2024, the parties agreed those shares would revert back to debt if trading restrictions on those shares were not removed by the end of the Second Quarter 2024. (*Id.*) However, because the Caveat Emptor was not lifted

by the end of the Second Quarter 2024, Plaintiff asserts the equity reverted back to debt. (Doc. No. 16 at 5.)

The Stock Agreement contains an arbitration provision, which states: "All claims, controversies and disputes between Purchaser and the Company shall be settled by binding arbitration before the American Arbitration Association with the venue for any hearing in respect therewith to be San Diego, California." (Doc. No. 15-2 at 6.) The Stock Agreement also included an "Exhibit A" entitled "Subscription Agreement," separately executed by the Parties on December 18, 2023. (*See id.* at 8–9.) The Subscription Agreement included an identical arbitration provision. (*Id.* at 9.) The Stock Agreement further included an integration clause, providing that the "Agreement and its Exhibit contain the entire agreement and understanding concerning the subject matter hereof between the parties and supersedes and replaces all prior negotiations, proposed agreement and agreements, written or oral." (*Id.* at 6.) The Stock Agreement, like the Notes, was drafted by Plaintiff. (Declaration of Mark Schmidt, Doc. No. 15-2, ¶¶ 3–4.)

The debt owed under the other four Notes was never converted to Cyberlux Corp. common stock. (Rosen Decl. ¶ 14.) These four Notes—the 10/22/21 Note, the 11/8/21 Note, the 5/23/22 Note, and the 7/12/22 Note—are referred to hereinafter as the "Unconverted Notes."

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

3

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)). Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## III. DISCUSSION

The parties do not dispute the validity of the arbitration provision set forth in the Stock Agreement, or that it demonstrates the parties' intent to arbitrate disputes arising under the terms of that Agreement. Rather, the parties disagree over the proper scope of the arbitration provision. None of the five Notes contain an arbitration clause, whereas the Stock Agreement does. Defendant asserts that because the Stock Agreement contains a broad arbitration clause, the parties are bound to arbitrate all of their claims. Plaintiff concedes the Stock Agreement contains an arbitration provision and does not contest Defendant's motion to compel arbitration of claims related to the conversion of the single 11/22/21 Note that was the subject of that agreement. (Doc. No. 16 at 5.) Accordingly, the Court **GRANTS** Defendant's motion to compel arbitration as to claims relating to the 11/22/21 Note and the Stock Agreement.

However, Plaintiff argues the four Unconverted Notes are not arbitrable under federal and California law. (*Id.*) The Court first determines the scope of the arbitration provision before considering whether the claims in the present dispute are subject to the arbitration provision contained in the Agreement.

### A. Delegation of Arbitrability

Under federal law, gateway questions of arbitrability can be "delegated to the arbitrator where 'the parties *clearly and unmistakably*'" so agree. *Brennan v. Opus Bank*,

796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Defendant raises for the first time in reply that the parties delegated the gateway issues of arbitrability to the arbitrator by reference to the American Arbitration Association ("AAA") rules. (Doc. No. 18 at 7.) Plaintiff responds that the arbitration clause here calls for arbitration with the AAA but does not incorporate or reference AAA rules, as required by Ninth Circuit law to create sufficiently clear and unmistakable evidence of the parties' intent to delegate arbitrability. (Doc. No. 20 at 5.) The Stock Agreement's arbitration provision states the claims "shall be settled by binding arbitration before the American Arbitration Association[.]" (Doc. No. 15-2 at 6.)

The Ninth Circuit held in *Brennan* that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," where one of the AAA rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." 796 F.3d at 1130. However, the Ninth Circuit has "never held that a mere reference to the AAA shows clear and unmistakable intent to delegate a gateway issue to an arbitrator[.]" *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1068 (9th Cir. 2020).

The Court finds the parties did not incorporate the AAA Rules by reference. Rather, the arbitration provision merely states that claims and controversies "shall be settled by binding arbitration before the American Arbitration Association" but does not reference the AAA Rules itself. Indeed, this is unlike *Rodriguez v. T-Mobile USA, Inc.*, No.: 22-cv-00581-AJB-DEB, 2023 WL 6593786 (S.D. Cal. Sept. 28, 2023), as cited by Defendant, in which this Court found a clear and unmistakable delegation to the arbitrator where the arbitration agreement stated, "the arbitration of all disputes will be administered by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules." *Id.* at *2. Rather, this case is akin to *Shivkov*, in which the Ninth Circuit found the parties did not incorporate by reference the AAA rules where the arbitration clause stated, "You and we

agree that in the event of any dispute that cannot be resolved between the parties, . . . all disputes will be subject to binding arbitration in Mesa, Arizona, with arbitrators to be agreed upon by the parties, and if no agreement is reached, then arbitrated by the American Arbitration Association (AAA)." 974 F.3d at 1057–58. Because the arbitration clause did not incorporate the AAA rules, the Ninth Circuit held there was no clear and unmistakable intent to delegate the availability of arbitration to the arbitrator. *Id.* at 1068–69.

Thus, for the reasons above, the Court holds the arbitration clause does not clearly and unmistakably delegate arbitrability issues to the arbitrator.

**B.     Scope of the Arbitration Agreement**

Next, the parties dispute whether the arbitration clause in the Stock Agreement applies to the Unconverted Notes, such that claims regarding those contracts—which do not contain arbitration clauses—also must be arbitrated. Defendant argues the Stock Agreement's arbitration clause encompasses all claims alleged in Plaintiff's Complaint. (Doc. No. 15 at 13–19.) Plaintiff responds the arbitration agreement does not encompass claims to enforce the Unconverted Notes. (Doc. No. 16 at 11–16.)

The scope of an arbitration agreement is a matter of contract. In interpreting the agreement, courts "must look to the express terms of the agreements at issue to determine whether [the parties] intended [the matters at issue] be arbitrated." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013). Because "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration," the presumption in favor of arbitrability is applied only where, as here, the parties contest the scope of an agreement to arbitrate. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741–42 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 477 (2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)). In such situations, arbitration is ordered where the presumption is not rebutted. *See id.*

///

///

### 1. Broad and Inclusive Language

Defendant first asserts the Stock Agreement's language is broad and inclusive, thus applying to all claims and disputes between the parties. (Doc. No. 15 at 17.) Here, the arbitration clause requires the arbitration of "all claims, controversies and disputes between Purchaser and the Company[.]" (Doc. No. 15-2 at 6, 9.) Defendant relies on several cases which hold that "'sweeping language' like 'any dispute' covers a broad range of disputes that may arise between parties to an arbitration agreement, even those that may arise outside of the agreement." *Parish v. Fitness Int'l, LLC*, No. SACV 20-613 PSG (RAOx), 2020 WL 5371510, at *4 (C.D. Cal. June 10, 2020) (quoting *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1180 (C.D. Cal. 2012)); *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, No. CV 00-5684 DT (CWx), 2000 WL 34017119, at *5 (C.D. Cal. Sept. 18, 2000) (holding that an arbitration provision encompassing "any" dispute arising "between the parties" "is so broad that it is not restricted merely to disputes that are connected with the agreement but may also be applied to independent tort claims arising after the conclusion of the agreement"). However, *Parish* and *Pyramid Travel* are distinguishable as neither involved a situation where the parties had signed multiple contracts for different transactions, in which arbitration clauses were contained in only one or some of the agreements. Rather, *Parish* involved a claim by a plaintiff who had entered into two agreements, both of which contained arbitration clauses. *Parish*, 2020 WL 5371510, at *1. Similarly, in *Pyramid Travel*, the plaintiff signed just one agreement which contained an arbitration clause. *Pyramid Travel*, 2000 WL 34017119, at *4–5.

Plaintiff responds this case is analogous to *QED Holdings, LLC v. Block*, No. CV 15-2390-GW(JEMx), 2015 WL 12659935 (C.D. Cal. June 11, 2015), in which the parties entered into two separate contracts, only one of which contained an arbitration agreement. *Id.* at *4–5. The *QED Holdings* court first noted the arbitration agreement in the first contract "must be construed broadly" because it included a broad arbitration clause requiring arbitration of any dispute "arising out of, relating to or in connection with [the Employment] Agreement[.]" *Id.* at *5. However, the court went on to state that "[w]here

parties execute an umbrella contract that incorporates as attachments other discrete agreements, . . . courts have concluded that even a broad arbitration clause appearing in an attached agreement only compels the arbitration of disputes arising out of that particular agreement." *Id.* at *6. The court thus compelled arbitration only of the disputes arising from the Employment Agreement. *Id.*

Plaintiff further relies on *Goodrich Cargo Systems v. Aero Union Corp.*, No. C 06-06226 CRB, 2006 WL 3708065 (N.D. Cal. Dec. 14, 2006), where the parties executed an Asset Purchase Agreement ("APA"), "an umbrella contract that sets forth the structure of the entire transaction." *Id.* at *1. The APA did not contain an arbitration clause. *Id.* However, attached to the APA was an appended Manufacturing License Agreement ("MLA"), which contained a binding arbitration clause. *Id.* While the defendant argued the MLA required arbitration of all claims because "the APA and the MLA were executed together as part of an integrated business transaction[,]" the court disagreed. *Id.* at *2. The court began by stating, "[j]ust because the parties enacted multiple agreements in connection with the acquisition of the . . . Business does not mean that this Court may ignore the fact that there are discrete agreements pertaining to different facets of the transaction." *Id.* "Only the latter agreement contains an arbitration clause, and it follows that the arbitration clause only applies to disputes as to those aspects of the transaction that are actually covered by the latter agreement." *Id.* The court further determined,

> The only logical inference to draw from the fact that the arbitration clause appears only in one of the attachments to the APA is that the parties intended the arbitration clause to apply to part of the transaction, and not to all of it. To hold otherwise would not only permit the tail to wag the dog, it would effectively mean that an arbitration clause included anywhere in a transaction must apply everywhere.

*Id.* at *3. The court also found dispositive that "the plain language of the arbitration clause requires that this Court confine it to the context of the MLA." *Id.* Specifically, the clause stated that the parties must submit to arbitration "all disputes, claims and controversies that arise under or relate in any way to *this Agreement*." *Id.*; *see also Rosenblum v.*

*Travelbyus.com Ltd.*, 299 F.3d 657, 663–66 (7th Cir. 2002) (holding that the terms of the arbitration clause in an employment agreement did not apply to another agreement between the parties since the clause specifically stated it only applied to "any matter in dispute under or relating to *this Agreement*") (emphasis added).

      The Court finds *QED Holdings* and *Goodrich Cargo* persuasive. This is particularly true as the terminology in the Stock Agreement's arbitration clause further confirms the Stock Agreement is a distinct transaction because it refers to Plaintiff as "Purchaser." (Doc. No. 16 at 19.) Plaintiff only acted as a "purchaser" in the Stock Agreement, using debt to purchase shares in the company. (*Id.*) In other contracts, Plaintiff is only the "lender," not a purchaser. (*Id.*) While the arbitration agreement here is certainly not a model of clarity, the Court finds the lack of arbitration clauses in the Notes and the terminology of the Stock Agreement weigh in favor of finding the arbitration clause is confined to the context of the Stock Agreement. However, this does not end the Court's analysis.

      **2.    Related Agreement**

      Plaintiff further argues the Unconverted Notes are separate and distinct transactions from the Stock Agreement, as evidenced by the Stock Agreement's integration clause. (Doc. No. 16 at 16–17.) Plaintiff contends each of the Unconverted Notes is a separate agreement executed two to one-and-a-half years before the Stock Agreement was executed. (*Id.*) Each Unconverted Note governs a separate loan transaction, and the Notes do not incorporate or reference each other. (*Id.* at 17.) Nor does the Stock Agreement incorporate or reference any of the other Notes or Loans. (*Id.*) Plaintiff asserts it "would have required a separate Cancellation of Debt in Exchange for Stock Agreement for each of the four unconverted notes had it decided to convert those notes/debt into equity." (Rosen Decl. ¶ 12.) In at least two separate instances, Plaintiff sent draft "Cancellation of Debt in Exchange for Stock Agreements"; first, for the 10/22/21 Note, and later for the 11/8/22 Note. (*Id.* ¶¶ 13–14; *see* Doc. Nos. 16-8, 16-9.) Each of the proposed agreements contained the same arbitration clause as the Stock Agreement, and neither were signed by Defendant. (*Id.*)

  Defendant replies that the internal communications between the parties demonstrates the Stock Agreement is part of a series of interrelated agreements, and thus the arbitration clause applies to any claims, controversies, or disputes between the parties. (Doc. No. 18 at 4.) Defendant provides evidence of the Proposal, submitted by Plaintiffs, which initiated the global transaction, and a press release issued in October 2021 which noted the Notes and their conversion to Stock were part of a larger, interrelated transaction. (*Id.* at 5.) However, Defendant does not respond to Plaintiff's arguments regarding the Stock Agreement's integration clause. (*See generally id.*)

  The Court finds persuasive that the inclusion of the integration clause in the Stock Agreement separates it from the Unconverted Notes. To this point, in *Doe v. Kaiser Foundation Health Plan, Inc.*, 725 F. Supp. 3d 1033 (N.D. Cal. 2024), the court determined that a broad arbitration clause, stating "[a]ny dispute shall be submitted to binding arbitration if all of the following requirements are met," covered disputes under a separate agreement which did not contain an arbitration provision. *Id.* at 1037, 1042. The court found "notable that neither the [Evidence of Coverage] nor the [Terms and Condition] contain an integration clause which would have effectively partitioned one agreement from the other; the absence of an integration clause permits an inference that the two are interrelated, as Kaiser contends." *Id.* at 1042; *see Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*, No. 3:19-cv-01677-AC, 2020 WL 2535047 at *6 (D. Or. Apr. 13, 2020) (rejecting defendant's argument that two agreements it entered into with plaintiff were interrelated agreements such that the arbitration clause in one agreement extended the other; noting that the agreement with the arbitration clause "contained a provision that stated its express terms constituted the 'entire agreement,' and prohibited any oral modifications or amendments"). This is further supported by the fact that the Stock Agreement does not incorporate or reference any of the other Notes or Loans. Rather, the Stock Agreement applies "the conversion price under a Promissory Note dated November 22, 2021" for the purchase of shares. (Doc. No. 15-2 at 8.) Moreover, the Stock Agreement states "the Company is indebted to the Holder in the aggregate sum of

$1,654,685.00 inclusive of accrued interest[,]" and does not mention the debts under any preceding Notes. Indeed, the parties had previously entered into the 10/22/21 and 11/08/21 Notes, each totaling $1,500,000, but the Stock Agreement does not reference or include those debts. Finally, it is notable that Plaintiff would have required a separate Cancellation of Debt in Exchange for Stock Agreement for each of the four Unconverted Notes had it decided to convert those Notes into equity.

Thus, the Court finds the Stock Agreement is not interrelated with the Unconverted Notes.

### 3. Claims Within the Scope of the Stock Agreement

The Court must next determine whether the Stock Agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. Any dispute merely "touching matters" covered by a contract containing an arbitration clause is subject to that arbitration clause. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Plaintiff's first cause of action for breach of contract is based on Defendant's failure to make payments to Plaintiff when due under of each of the Notes, including the 11/22/21 Note. (Compl. ¶¶ 7–16.) Plaintiff's second cause of action for declaratory relief is brought to determine the rights and obligations of the parties under the Notes. (*Id.* ¶¶ 17–22.) Specifically, Plaintiff "contends that there was no valid conversion of debt owed under the 11/22/21 Note into equity and that [Defendant] has not complied with any the [sic] conditions it agreed to for converting debt into equity and/or maintaining any such conversion." (*Id.* ¶ 21.)

Defendant argues the factual allegations underlying Plaintiff's declaratory relief and breach of contract claims fall within the scope of the Stock Agreement's arbitration clause. (Doc. No. 15 at 17.) First, Defendant argues Plaintiff's declaratory relief claim centers around the dispute of whether the Notes remain the operative governing contracts between the parties, and whether the Notes sums are presently due and owing. (*Id.* at 17–18.) Thus, asserts Defendant, Plaintiff implicitly relies on the Stock Agreement by alleging a controversy exists because "[Defendant] contends that outstanding debt on 11/22/21 note

1 was converted into equity in [Defendant] in December 2023," and any resolution of this
2 dispute will require an analysis of the Stock Agreement. (*Id.* at 18 (quoting Compl. ¶ 20).)
3 Defendant further contends Plaintiff's breach of contract claim falls within the scope of the
4 Stock Agreement because Plaintiff seeks relief for all Notes executed between the parties,
5 including the 11/22/21 Note which directly relates to the Stock Agreement. (*Id.*)

6 Plaintiff responds that whether Defendant breached the Unconverted Notes is not
7 dependent on whether it breached the Stock Agreement or the other Notes. (Doc. No. 16 at
8 18.) Thus, argues Plaintiff, the determination of liability and damages for breach of each
9 of the Unconverted Notes can be evaluated independent of each other and independent of
10 the Stock Agreement. (*Id.*) Plaintiff also asserts Defendant misconstrues the second claim
11 for declaratory relief, as this claim only references the dispute between the parties
12 regarding the 11/22/21 Note, and whether that Note alone was validly converted into
13 equity. (*Id.* at 18 n.4.) Plaintiff argues this issue does not require determining any issue
14 with respect to the Unconverted Notes, nor does a declaration determining whether the
15 conditions for maintaining the conversion of debt into equity affect whether Defendant is
16 required to pay back the other loans. (*Id.*)

17 The Court determines the Stock Agreement's arbitration clause, while broad, does
18 not encompass Plaintiff's claims regarding the Unconverted Notes. The Stock Agreement
19 does not reference or incorporate the Unconverted Notes, and Plaintiff's claims as to the
20 Unconverted Notes need not be submitted for arbitration simply because some facts
21 relating to the Stock Agreement are relevant to provide context for the breach of contract
22 claim. *See Marsch v. Williams*, 23 Cal. App. 4th 250, 252–53, 256 (1994) (denying a
23 motion to compel the arbitration of claims based on the defendant's conduct with respect
24 to a partnership with the plaintiff that was not subject to an arbitration provision, even
25 though the claims relied on actions the defendant took with respect to a second partnership
26 with the plaintiff that was subject to an arbitration provision).

27 Accordingly, the Court **DENIES** Defendant's motion to compel arbitration as to
28 Plaintiff's breach of contract claim to the extent it is predicated on the Unconverted Notes

and **GRANTS** the motion as to Plaintiff's breach of the 11/22/21 Note and the Stock Agreement, and Plaintiff's declaratory relief claim.

### C. Stay of Action

Defendant contends the Court should stay the entire case pending the outcome of arbitration. (Doc. No. 15 at 19.) Plaintiff opposes staying the case pending arbitration of the Stock Agreement claims, arguing the outcome of arbitration will not affect the determination of the claims on the Unconverted Notes. (Doc. No. 16 at 19–20.)

Section 3 of the FAA provides the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. When there are some claims subject to arbitration while others are not, the "decision [regarding whether the entire case should be stayed pending the outcome of arbitration] is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 21 n.23; *see also Dean Witter Reynolds*, 470 U.S. at 225 (White concurring) ("[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed.").

The Court stays litigation on Plaintiff's first claim for breach of contract to the extent it is based upon the 11/22/21 Note and Stock Agreement, and second claim for declaratory relief. The Court does not stay Plaintiff's first claim for breach of contract to the extent it is based upon the Unconverted Notes.

## IV. CONCLUSION

Based on the foregoing:

1. Defendant's motion to compel arbitration is **GRANTED** as to Plaintiff's claim for declaratory relief, and as to Plaintiff's claim for breach of contract to the extent it is based upon the 11/22/21 Note and Stock Agreement. The motion is **DENIED** as to Plaintiff's claim for breach of contract to the extent it is based on the Unconverted Notes, (Doc. No. 15);

///

2. Pursuant to the FAA, the Court **STAYS** this case as to Plaintiff's first claim for breach of contract to the extent it is based on the 11/22/21 Note and Stock Agreement, and as to the second claim for declaratory relief. The case is not stayed as to Plaintiff's breach of contract claim to the extent it is predicated upon the Unconverted Notes.

3. The Parties are ordered to file a joint status report with this Court, detailing the progress of the arbitration in 180 days from the date of this order;

4. The Parties are further required to notify the Court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision;

5. The Parties are also directed to contact the magistrate judge within three (3) days of this Order to schedule the continued Early Neutral Evaluation.

**IT IS SO ORDERED.**

Dated: January 17, 2025

Hon. Anthony J. Battaglia
United States District Judge